**WEST, Secretary of the Interior, v. UNITED STATES ex rel. ALLING.**

Court of Appeals of District of Columbia.

Argued November 7, 1928. Decided January 7, 1929.

No. 4798.

O. H. Graves and Leo A. Rover, both of Washington, D. C., for appellant.

James W. Beller and C. H. Merillat, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

VAN ORSDEL, Associate Justice. This appeal is from an order of the Supreme Court of the District of Columbia issuing a writ of mandamus to compel the Secretary of the Interior to reinstate the application of Jean Alling, hereafter for convenience referred to as plaintiff, and to issue her a permit to prospect for oil and gas upon certain land in the Visalia, Cal., land district.

The petition was filed by plaintiff's father, Mark N. Alling, as guardian of Jean Alling, a minor. It appears that the land in question was covered by an oil and gas permit, which was canceled by the Secretary of the Interior on May 7, 1927, the cancellation to become effective June 8, 1927, on which date, under instructions from the General Land Office, the register of the local land office was directed to receive applications for permits under the Leasing Act between the hours of 9 and 10 a. m., and, in the event of their being conflicting applications, to hold a public drawing at 2 p. m. on the same day; the successful applicant under the regulations then in force being the first qualified applicant whose name was drawn.

On the 6th of June plaintiff submitted to the register her application, executed in proper form, for a permit to prospect for oil and gas on the land in question. There were a large number of conflicting applications, and plaintiff's name was first drawn, whereupon the following record of the drawing was made:

"Jean Alling, serial 028032, address, 284 Perkins street, Oakland, Cal., drew No. 1."

The record then shows that there were 169 unsuccessful applicants. The applications were all transmitted by the register to the General Land Office at Washington. Plaintiff's application was denied by the Secretary, upon the sole ground that at the date of the drawing she was not of lawful age to make a valid application, being only 17 years and 10 months old.

It is conceded that plaintiff is a citizen of the United States, and a resident of the state of California; and that she is in all respects ready, able, and willing "fully and completely to comply with all the regulations made pursuant to the law in respect of the duties and obligations of a permittee under the act."

Section 1 of the Leasing Act, 41 Stat. 437 (30 USCA § 181), among other things, provides:

"That deposits of coal, phosphate, sodium, oil, oil shale, or gas, and lands containing such deposits owned by the United States, * * * shall be subject to disposition in

the form and manner provided by this Act to citizens of the United States, or to any association of such persons, or to any corporation organized under the laws of the United States, or of any state or territory thereof."

Section 13 of the act (30 USCA § 221) provides:

"That the Secretary of the Interior is hereby authorized, under such necessary and proper rules and regulations as he may prescribe, to grant to any applicant qualified under this Act a prospecting permit, which shall give the exclusive right, for a period not exceeding two years, to prospect for oil or gas upon not to exceed two thousand five hundred and sixty acres of land."

Section 14 of the act (30 USCA § 223) provides:

"That upon establishing to the satisfaction of the Secretary of the Interior that valuable deposits of oil or gas have been discovered within the limits of the land embraced in any permit, the permittee shall be entitled to a lease for one-fourth of the land embraced in the prospecting permit."

Section 32 (30 USCA § 189) provides:

"That the Secretary of the Interior is authorized to prescribe necessary and proper rules and regulations and to do any and all things necessary to carry out and accomplish the purposes of this act."

█ It will be observed that the act, in section 1, expressly provides for the disposition of oil and gas lands through prospecting permits and subsequent leasing "to citizens of the United States," and the power vested in the Secretary to establish rules and regulations for the carrying out of the act does not imply the power to establish a rule or regulation that will conflict with an express provision of the act. It follows, we think, that, if the applicant sufficiently qualifies as a citizen of the United States, the Secretary is powerless to refuse such applicant a permit, or to make any rule or regulation that interferes with the right of such applicant.

█ This brings us to the direct question of whether or not an applicant under lawful age, a minor, may be regarded as an applicant within the terms of the act. Where no age limit is expressly stated in the act, a minor is regarded as a citizen. Such has been the law since the early decision of the Supreme Court in Minor v. Happersett, 21 Wall. 162, 22 L. Ed. 627.

Especially has the right of minors been upheld in the decisions relating to the application of the mining laws in the West. In the case of Thompson v. Spray, 72 Cal.

528, 14 P. 182, involving the right of minor children to sign and post a valid location notice, the court said: "Does the fact that these plaintiffs were minors at the time of the location invalidate the notice as to them? We have not been referred to any decision which holds that it does. The provision of the statute is that mineral deposits in public lands are open to 'citizens of the United States and those who have declared their intention.'" Rev. St. § 2319 (30 USCA § 22). No requirement that the citizen shall be of any particular age is expressed. And unless we are prepared to affirm that minors are not citizens, we do not see how we can say that they are not entitled to the benefit of the act. This conclusion is strengthened by the circumstance that in some instances the statute expressly requires that the citizen shall be of age. Thus, in reference to coal lands, the provision is that "every person above the age of 21 years, who is a citizen of the United States." Rev. St. § 2347 (30 USCA § 71). So, with reference to homesteads, the provision is that "every person * * * over the age of 21 years, and a citizen," etc. Rev. St. § 2259.

The expression of a requirement as to age in some instances, and the omission of it in others, is significant. Nor is there any reason in the nature of things why a minor may not make a valid location. After the preliminary steps are taken, all that is required is that a certain amount of work shall be done. If the minor can do it, or can get any one to do it for him, the condition imposed by the statute is fulfilled; if he cannot, his claim lapses, and the mine is open to location by others. It may be added that, so far as we know, it is the practice in many mining communities for minors to locate claims."

Following the decisions in the foregoing cases, it is declared in Lindley on Mines, § 224, p. 495, that "neither age nor sex is involved in the definition of the word 'citizen.' It therefore includes men, women, and children." Likewise, in Morrison on Mining Rights, p. 65, it is said: "The case of Thompson v. Spray, supra, holds that a minor child may make a valid location; where a minor old enough to prospect and work locates a claim, we do not see why his minority should invalidate his title."

█ Having disposed of the question of the citizenship of plaintiff, and her right under the statute to make a bona fide application for a permit, we now come to the question of the jurisdiction of the Supreme Court of the District of Columbia to compel the Secretary

by mandamus to issue a permit. It will be observed that the Secretary is given broad power to establish proper rules and regulations for carrying the Leasing Act into effect. In the petition, the existing regulations of the department are set out and admitted by the response to the rule to be correct, as follows:

"Regulations concerning the issuance of oil and gas permits and leases, under the Act of February 25, 1920, and in pursuance thereof, were duly promulgated by the Secretary of the Interior March 11, 1920, and are designated as 'General Land Office—Circular No. 672,' in which said regulations the necessary and only qualifications of applicants are set forth as follows:

" '1. *Qualifications of Applicants.*—Pursuant to section 1 of the act, permits may be issued to (a) a citizen of the United States; (b) an association of such citizens; (c) a corporation organized under the laws of the United States or of any State or Territory thereof; or (d) a municipality.'

"Section 4 of the aforesaid regulations, under the title 'Form and Contents of Application,' provides that no specific form of application is required, but that said application shall be under oath, contain applicant's name and address, 'proof of citizenship of applicant, by affidavit of such fact, if native-born,' etc., a statement that the applicant comes within the requirements of the law in respect of any interest in other oil and gas permits and leases under the act; a description of the land upon which a permit is desired; that the land applied for is not within any known geological structure of a producing oil or gas field; requires of the applicant references as to reputation and business standing; and provides that a bond shall be furnished by applicant, which bond may be filed 'within 10 days after receipt of notice by the applicant that the permit will be granted when bond is filed,' etc."

Notwithstanding plaintiff's full and complete compliance with the existing regulations of the department, it is urged by counsel for the government that the Secretary, in the exercise of his discretionary power, may, without assigning any other reason, deny plaintiff's application on the ground that at the time the application was made she lacked two months of having attained legal age under the laws of the state of California. This raises the question of the binding force of rules and regulations upon an executive officer of the department until they are duly abrogated.

In the early case of United States v. Mac-Daniel, 7 Pet. 1, 8 L. Ed. 587, the court, considering the broad powers of a department of the government to establish rules and regulations for the conduct of its business, when not in conflict with express provisions of law, said:

"Hence, of necessity, usages have been established in every department of the government, which have become a kind of common law, and regulate the rights and duties of those who act within their respective limits. And no change of such usages can have a retrospective effect, but must be limited to the future. Usage cannot alter the law, but it is evidence of the construction given to it, and must be considered binding on past transactions."

On the question of the illegality of orders made by the Secretary of the Interior in conflict of existing regulations, the case of James v. Germania Iron Co. (C. C. A.) 107 F. 597, is conclusive. The facts in that case were that on February 18, 1889, the Secretary of the Interior decided that a prior entry of a certain tract of land was void, and that the land had been restored to the public domain. Notice of his decision was given the local land officers on February 22, 1889. On February 19th, A made an application to enter the land at the local land office. B was the first applicant to enter it after the officers of the local land office had received notice of the decisions cancelling the prior entry. The Secretary held that A acquired the superior right to the land, and accordingly issued a patent. The court held that this decision was clearly an error of law, and that B, the first applicant after official notification of the decision had been received at the local land office, was entitled to a decree charging the title under the patent with a trust for his benefit.

The decision in this case by Judge Sanborn, of the Eighth judicial circuit, in which Caldwell and Thayer, Circuit Judges, concurred, is a full and complete announcement of the law as to the power of the Secretary of the Interior to ignore existing regulations. Quoting from the syllabus, which epitomizes the law as announced in the opinion, the court held that "rules of practice of the Land Department formally established and promulgated by authority of the Secretary of the Interior, can be repealed or abrogated by like formal action and publication only. Decisions or opinions of the Secretary and the Commissioner in contests between claimants for specific tracts of land ignoring or violating rules neither repeal nor modify them."

It will be observed that in this case the

illegal action was taken before the promulgation of the decision of the Secretary became complete, or before it had reached the officials of the local land office. Much stronger is the present case, where it is attempted to make an order of the Secretary retroactive, to supplant a regulation in full force and effect at the time plaintiff made her application and acquired her rights under it. Unquestionably, the Secretary has the power to repeal and abrogate rules and regulations of his Department, but such action must have the same formal sanction that brought the rule into existence, and cannot be retroactive and apply to rights acquired under the preexisting rules.

In disposing of this case on the inability of the Secretary to ignore an existing rule of his department, we are not expressing any opinion as to his power to promulgate a rule that would exclude a minor from the privileges of the act, in view of its express provision generally extending the rights conferred "to citizens of the United States."

The judgment is affirmed, with costs.